**BOURJOIS, Inc., v. McGOWAN.**

No. 1559.

District Court, W. D. New York.

Nov. 19, 1935.

Mark Eisner, of New York City (George R. Fearon, of Syracuse, N. Y., and Ferdinand Tannenbaum, of New York City, of counsel), for plaintiff.

Frank J. Wideman, Asst. Atty. Gen., Andrew D. Sharpe, Clarence E. Dawson, and Frederic G. Rita, Sp. Assts. to Atty. Gen. (George L. Grobe, U. S. Atty., of Buffalo, N. Y., Goodman Sarachan, Asst.

U. S. Atty., of Rochester, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

This suit is brought to recover $13,-918.39 paid by the plaintiff as additional tax on cosmetic and toilet preparations for the month of September, 1932.

The plaintiff was incorporated in 1929 under the name of International Perfume Company. A change to the present name was made in 1930. Barbara Gould, Limited, a corporation engaged in manufacturing beauty and treatment lines, was legally merged with plaintiff on August 9, 1932. On the last-mentioned day, Bourjois Sales Corporation and Barbara Gould Sales Corporation were incorporated. The plaintiff at all times since August 9, 1932, has been the owner of all the issued and out-standing stock of Bourjois Sales Corporation and Barbara Gould Sales Corporation and the owner of all of the brands, trade-marks, and formulas used and employed in connection with its business of manufacturing toilet preparations and cosmetics. The greater part of plaintiff's production was sold to the above-named sales corporations, the balance being sold to a limited number of foreign corporations operating in foreign markets. The plaintiff sold its products to the two sales corporations at the cost of manufacturing, including the cost of containers, labels, and things of like nature, plus 1½ per cent., plus 10 per cent., plus the tax.

Under section 603 of the Revenue Act of 1932 (26 U.S.C.A. § 1481 note), a tax is imposed on articles of the type manufactured by the plaintiff equivalent to 10 percentum of the price for which such goods are sold. On certain items the tax is reduced to 5 percentum of the selling price, but for convenience the tax will be referred to as a tax of 10 percentum. Plaintiff paid such tax computed on the price at which it sold its products to the domestic and foreign sales corporations.

Section 619 (b) (3) of the above-mentioned act (26 U.S.C.A. § 1481 note) provides as follows: "If an article is * * * sold (otherwise than through an arm's-length transaction) at less than the fair market price; the tax under this title shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Commissioner." The Commissioner of Internal Revenue determined that the plaintiff's sales were made at less than the fair market price, through transactions at less than arm's length. He thereupon determined that the price at which the sales corporations sold the plaintiff's products constituted the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof. He computed the additional tax, now in litigation, by applying the rate of tax, fixed by section 603, to the difference between the amount secured by the plaintiff as the result of its sales and the amount received by the sales corporations on resale of the goods. Plaintiff paid this tax, subsequently filing a claim for refund. It is asserted that such additional tax was not collected by plaintiff from its customers.

Plaintiff claims that its sales to the sales corporations were at a fair market price inasmuch as articles made up of similar ingredients are sold at that price, in the ordinary course of trade, by other manufacturers and producers and, therefore, that section 619 (b) (3) has no application to its transactions and the Commissioner erred in levying the additional tax. The government contends that the alleged sales to the sales corporations were not "arm's length" transactions; that they were made at less than the "fair market price"; and that the Commissioner properly determined the price at which such products are sold, in the ordinary course of trade by manufacturers and producers thereof, and properly computed the tax on that basis.

The government cites section 601 (a) and 240(d) of the Revenue Act of 1926, 44 Stat. 46, 94, as supporting the position taken by the Commissioner. Section 601 (a) of the Revenue Act of 1926 (26 U.S. C.A. § 1124 (b) (1) and note), provided that when the manufacturer sells articles of the kind in question here to a corporation affiliated with it within the meaning of section 240 of such act "at less than the fair market price obtainable therefor, the tax thereon shall be computed on the basis of the price at which such article is sold * * * by such affiliated corporation." Section 240 (d) of the same act (44 Stat. 46) brings these two sales corporations within the term "affiliated" as included in section 601 (a). The government claims that these sections of the act of 1926 are not inconsistent with sec-

tion 619 of the Revenue Act of 1932 (26 U.S.C.A. § 1481 note) and therefore were not repealed; that section 619 of the last-mentioned act was intended to cover not only transactions covered by section 601 (a), Revenue Act 1926, but also other transactions arising from time to time not specifically falling within the narrower provisions of the latter act. If the sections are not inconsistent one with the other, the earlier ones are not repealed. Section 627 (26 U.S.C.A. § 1481 note) specifically so provides with respect to all provisions of law applicable in respect of the taxes imposed on articles enumerated in section 600 of the Revenue Act of 1926 (26 U.S.C.A. §§ 1120, 1124 (a). Neither section 601 (a) nor section 240 (d) of the Revenue Act of 1926 has been specifically repealed by the Revenue Act of 1932.

Section 601 (a) and section 619 (b) (3) provide different methods for computing the tax. One makes the price at which the article is sold by the affiliated company the basis; the other uses for a base the price charged by manufacturers or other producers, in the ordinary course of trade. There was no reason to retain the old provisions unless it was intended to impose the tax as theretofore and that is denied by the fact that the act of 1932 fixes a new basis of taxation. The ruling of the Treasury Department in 1932 (S.T. 617, C.B. Dec. 1932, p. 513) recognizes that section 619 (b) (3) is applicable to sales between corporations such as those involved here. Under this ruling the Department held that these corporations were recognized as separate entities and assessable the same as though not affiliated, and it would then follow, if the transaction was at arm's length between corporations or at a fair market price, sections 603 and 619 (a), Revenue Act 1932, 26 U.S.C.A. § 1481 note, only would apply and if not at arm's lengths and not at a fair market price, section 619 (b) (3) would also apply. Sections 240 (d) and 601 (a) of the Revenue Act of 1926 must stand or fall with respect to their consistency with the provisions of the Revenue Act of 1932. Under the act of 1932, there would be no distinction made between corporations such as those involved here and corporations not so related where the transactions were not at arm's length. Since the act of 1932 is broad enough to include transactions between corporations such as these, it seems to me it was the intent to include transactions of the kind

involved, and, if that is so, the tax must be imposed as provided by section 619 (b) (3). It is my view that section 601 (a) of the Revenue Act of 1926 is not applicable to the taxes imposed in this case, since section 619 (b) (3) is intended to cover transactions formerly covered by section 601 (a).

If a sale is at a fair market price, or if it is at arm's length, the tax is assessed, under section 603, at 10 per cent. of the sale price, allowing for the modification made by subdivision (a) of section 619 (that is, including packing and less the tax charge), and also allowing deduction for transportation, etc., as determined by the Commissioner. If the sale is not at arm's length, section 619 (b) (3) applies, but only in the event that such sale is at less than the fair market value.

Sales between a manufacturing company and sales corporations in which such manufacturing company owns all of the stock are not ipso facto "not at arm's length." Whether they are not at arm's length raises a question of fact. That such sales are prima facie "not at arm's length" is recognized by the ruling of the Treasury Department on the Revenue Act of 1932 (S.T. 617, C.B. Dec. 1932, p. 513). Pointing out the purpose of section 619 (b) (3) and that Congress "apparently foresaw the probability of the creation of corporations having identical interests," it is stated: "Viewing the statute in this light, it must be presumed that Congress did not intend to have two or more affiliated corporations recognized as a single entity for manufacturers' excise tax purposes." However, upon the facts shown in this suit, it seems to me that there is a presumption that the transactions in question were not at arm's length.

Prior to the merger plaintiff and Barbara Gould, Limited, manufactured articles having established and well-known trade-names and each had an extensive business built upon such distinctive name. Price lists of both Bourjois, Inc., and Barbara Gould, Limited, were put out effective June 21, 1932. After the merger, plaintiff held the ownership and title to all of the brand names, trade-marks, and formulas used and employed in connection with the articles manufactured by both Bourjois, Inc., and Barbara Gould, Limited. In August, 1932, two sales corporations were organized, and the business done by them was almost entirely the sale

of the plaintiff's product. In September, 1932, the sales corporations sold the same articles theretofore advertised and sold by Bourjois, Inc., and Barbara Gould, Limited, at the same prices at which they were previously advertised and sold by the latter two corporations. Sales to the sales companies were at a price fixed by taking the cost of manufacture plus 1½ per cent. of such cost, plus 10 per cent., plus the tax. Except for the keeping of separate books of account, the business of the three corporations was carried on largely as the business had been prior to September, 1932. The same business location and quarters were utilized. The same employees as theretofore continued in employment. The sales manager for both sales corporations continued as assistant treasurer of the three corporations. It seems to me that the presumption that these transactions were not at arm's length has not been met or overcome. In law it resulted in nothing more than carrying on the old business by a changed method.

▮ Were the sales to the sales corporations made at a fair market price? It is claimed by the government that these articles are highly specialized, that they have a price peculiar to themselves by reason of plaintiff's monopoly of them and by virtue of their trade-names, Bourjois and Barbara Gould, and that the fair market price, as it must be arrived at under the circumstances shown, is the price for which they were sold by the sales companies and the price at which, shortly prior to September, 1932, they had been sold by the plaintiff. Plaintiff claims not only that the sales were made at a fair market price, but also that the price at which its products were sold was the price at which such articles are sold, in the ordinary course of trade, by manufacturers and producers thereof.

Market price is often defined as the price at which a seller is ready and willing to sell and a buyer ready and willing to buy in the ordinary course of trade. This rule of value is the same as provided in section 619 (b) (3). Several manufacturers of cosmetics and perfumes testified as to the fair market price of plaintiff's products and fixed such price as less than or comparable with the price charged the sales corporations by the plaintiff. The testimony of these witnesses is, in effect, that articles made for a similar purpose by various manufacturers are composed of substantially the same ingredients and that the cost of manufacture is substantially the same. Having in mind these costs and the item of reasonable profit they are able to say what they think the fair market prices are. Whether these articles are such that a comparative estimate of market prices can be made or whether no such comparison can be made as a basis of fixing fair market price, where plaintiff sells under well established trade-marks and brands and has what, for all practical purposes, is a monopoly by virtue of such trade-marks and brands, the court will take judicial notice that a great volume of business is done in reliance upon or belief in the product of particular producers. Initial reliance is often shaken by results, but where a concern has manufactured a useful and pleasing article for a number of years under the same brand name or trade-mark, public satisfaction with the article is demonstrated. People do not long do business at a loss. Continued business must mean continued sales. Bourjois, Inc., is a well-known and well recognized manufacturer of perfumeries and cosmetics. The sale of its products reached such proportions that in September, 1932, assessment of the tax in question disclosed a business of upwards of $100,000 for a single month. The evidence shows that the retail prices of perfumes and cosmetics made by different producers vary largely in amount and that such prices also vary largely from the cost of manufacture. One witness testified that there were large variances in such prices where only perfume was added to a cream and a container had been changed, both involving little additional cost. This witness explained such differences on the theory that the prices are dictated by one who has a monopoly on the sale. Bourjois products are bought, because they are Bourjois made. Bourjois has a monopoly on the cosmetic and perfume business under that name. It is true the initial cost of manufacture is comparatively small, but people buy Bourjois products on their reputation with slight regard to prices paid. Bourjois products doubtless can be duplicated by other manufacturers. Their parts and proportions are easily determinable. Other manufacturers may put on the market the same products as Bourjois, Inc., but they cannot be sold under the names Bourjois and Barbara Gould. While they may sell the same article in so far as constituent parts are concerned, they are not

the same articles as sold by the plaintiff by reason of the fact that they are not represented to be plaintiff's products. There is no evidence that any one else sold articles of the same ingredients as those manufactured by the plaintiff. It was stated by one witness that articles, similar in nature, which cost the same amount to manufacture, may, on account of the trade-names or brands under which they are sold, bring widely divergent prices, and further that when a manufacturer has built up a demand through the acquisition of a clientele or following, the price charged may be "whatever the traffic will bear."

■ Plaintiff's monopoly on the use of its trade-names is a valuable right. Testimony introduced by the plaintiff indicates that the value of such right is predicated on advertising. Because of the highly competitive condition of the market, if advertising of the goods were discontinued, sales and the value of the monopoly of the use of the trade-names would rapidly approach the vanishing point. Plaintiff itself does no advertising. It is merely a manufacturing corporation. The price at which it sells to the sales corporation includes no charge to offset advertising and promotional expense. For this reason, plaintiff asserts that it is in a class with manufacturers who produce similar articles regardless of trade-name. It was not intended that the cost of advertising and promotion of sales should be included in arriving at the price on which the tax should be computed. It would seem, therefore, that the fair market price of the plaintiff's products should be arrived at by comparison with prices charged by other manufacturing companies not engaged in sales promotion. Other manufacturing companies' prices being similar and similarly arrived at, the plaintiff's selling price would seem to be the fair market price and the proper basis for computing the tax. On such a finding, it would not matter that the sale was not at arm's length, and we would have no further concern with the price charged by the sales companies on resale of the goods.

However, the preceding finding fails to take into consideration the fact that the plaintiff is the sole stockholder in the sales corporations, controls the policies thereof, and dictates the prices at which they shall resell the plaintiff's products. A corporation and its stockholders are generally to be treated as separate entities. Cannon Mfg. Co. v. Cudahy Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399. Ordinarily, corporations are to be regarded as separate entities even though their stockholders are the same or when one corporation owns all of the stock of the other. However, the fiction of separate identity will not be adhered to when one corporation, organized, owned, and controlled by another, is so managed as to make it merely an instrumentality or adjunct of such other corporation. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Northern Securities Co. v. United States, 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679; Martin v. Development Co. (C.C.A.) 240 F. 42; and In re Watertown Paper Co. (C.C.A.) 169 F. 252. "The objects of the statute are not to be defeated by mere forms of transactions." Metropolitan Holding Co. v. Snyder (C.C.A.) 79 F.(2d) 263, 266. Such is the situation in the instant case. The sales corporations were organized and all stock therein is owned by the plaintiff. There could be no other finding than that the plaintiff controls the policies of the sales corporations and dictates the prices at which their sales are made. The sales corporations were merely agents of the plaintiff. Palmolive Manufacturing Co. (Ontario) Ltd. v. The King, Canada Law Reports 1935, 131. Sales by the sales companies were really sales of the plaintiff. Advertising and sales promotion, ostensibly carried on by the sales corporations, were, indirectly, the work of the plaintiff. Bourjois, Inc., from whom alone Bourjois and Barbara Gould products can be obtained, is thus found to be selling its products at the prices charged by the sales corporations.

■ Many staple articles have market values which may be established as the result of sales of similar articles. The market value of Bourjois, Inc., products cannot be determined by comparison with the values of other perfumes and cosmetics. Their market value is the value which they bring in the market. As was said in Poppenberg v. Owen & Co., 84 Misc. 126, 146 N.Y.S. 478, 488, affirmed 221 N.Y. 569, 116 N.E. 1070: "The price the defendant established was the price that controlled. So we have a special article of manufacture, handled only by, and exclusively by, the defendant." There is no market price

for plaintiff's product other than the price fixed by the plaintiff. In such cases that price must be said to be the "fair market price" for the purpose of taxation. The Pierce-Arrow Car Co. v. United States (Ct.Cl.) 11 F.Supp. 60, opinion June 3, 1935.

◼ What was the price fixed by plaintiff for its products? Was it the price charged to the sales corporations or the price charged by the sales corporations? The plaintiff sold goods at the former price only to the sales corporations, which were owned by plaintiff and whose profits were profits of plaintiff, and to a limited number of foreign corporations operating in limited foreign markets. At no time did plaintiff offer to sell its merchandise to the wholesale trade generally at the prices charged to its sales corporations. The plaintiff itself made no sales in the open market. Thus there is no basis for determining the market value of its products except by looking to the price at which the goods were sold by the sales corporations. Such prices were determined by the plaintiff, since plaintiff, the owner of such sales corporations, must necessarily dictate its policies and prices. The plaintiff, therefore, made the first offer of its goods to the public at the prices charged by the sales corporations. This was the selling price fixed by the plaintiff, the manufacturer. This was the price which must be regarded as the fair market value for the purpose of taxation. The price at which the plaintiff sold to the sales corporations was less than the fair market price. The Commissioner having reached that determination, it devolved upon him, under section 619 (b) (3), to determine the price for which such articles are sold in the ordinary course of trade by manufacturers or producers thereof. The Commissioner properly determined that the price at which the goods were sold by the sales corporations was the price at which the goods are sold in the ordinary course of trade, by manufacturers or producers thereof, and the price on which the tax should be computed.

◼ The law is well settled by a long line of decisions that, in the absence of fraud, a taxpayer may utilize any legal method to escape payment of a tax. Gregory v. Helvering, supra; United States v. Isham, 17 Wall. (84 U.S.) 496, 21 L.Ed. 728, Chisholm v. Commissioner (C.C.A.) 79 F.(2d) 14, certiorari denied Helvering v. Chisholm, 56 S.Ct. 174, 80 L.Ed. ——, Nov. 11, 1935; Jones v. Helvering, 63 App.D.C. 204, 71 F.(2d) 214; Eaton v. White (C.C.A.) 70 F.(2d) 449; and Iowa Bridge Co. v. Commissioner of Internal Revenue (C.C. A.) 39 F.(2d) 777. Plaintiff had the right to organize the sales corporations in an attempt to lessen the taxes assessable against it. The fact that plaintiff owned all of the stock of the sales corporations does not affect their right to incorporation and separate existence. The purpose behind their organization is of no moment. The court is interested in determining what the statute was intended to reach and, having found on that point, in determining whether the acts of the taxpayer, designed to carry it without the operation of the statute, were sufficient to accomplish such a result. Gregory v. Helvering, supra. Section 603 was designed to tax the actual manufacturer's selling price. Section 619 (b) (3) was passed to prevent taxpayers from dodging payment of the tax by means of artificial transactions designed solely for that purpose. Sections of the Revenue Act of 1926, cited hereinbefore, are evidence that the intent of the Congress was to reach the actual manufacturer's selling price regardless of any attempt of the taxpayer to hide such price through transactions with dummy affiliates or artificial price manipulations.

This litigation arises from plaintiff's attempted concealment of its selling price through the organization of the sales corporations. Having found that the transactions in question between the plaintiff and the sales corporations were not at arm's length and that the price at which the articles were sold to the sales corporations was not the fair market price, the conclusion follows that the method by which the plaintiff determined its selling price was a mere cover and a fraud upon the government. In fact, a part of the plaintiff's actual selling price was included in the sales price of the sales corporations. In collecting such portion of the plaintiff's selling price, the sales corporations were mere agents of the plaintiff.

◼ As heretofore pointed out, section 619 defines certain things to be included in the price and certain things which are or may be excluded. Packaging and charges incident to it are added. The amount of the tax is excluded. "Transportation * * * or other charge (not required by the foregoing sentence to be

included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Commissioner, in accordance with the regulations." Revenue Act 1932, § 619 (a), 26 U.S.C.A. § 1481 note. When the act of 1932 was being considered in Congress, it was stated by the introducer that the selling cost was not intended to be added. This was in answer to an inquiry as to whether the manufacturer's price included salesmen's commissions. If the sales corporations are to be construed as a salesman selling on commission, the corporations' extra charge might be excluded from the tax. Sales by these sales corporations mean more than sales by single salesmen. Sales corporations themselves employ salesmen. Sales corporations take a profit on the sales made by salesmen. What was meant by this declaration was that commissions of salesmen selling for the manufacturer in the ordinary way were not to be included. Many other items enter into the sales price of the sales corporations. To allow salesmen's commissions and costs and expenses of advertising and selling to be excluded from the sale price, the amount thereof under section 619 (a), supra, must be established to the satisfaction of the Commissioner, and that means there must be some basis on which a deduction can be made on account of such expenses. There is nothing in the record to show the amount of such commissions and costs or what the actual expenses were. We, therefore, are not required to determine whether any deduction should be made. The determination as made by the Commissioner without any proof of actual expense of sales is right.

■ Plaintiff asserts that it has not collected these additional taxes. After the merger, the catalogues of the sales corporations listed the goods at the same prices at which they had previously been listed in the catalogues of Bourjois, Inc., and Barbara Gould, Limited, and stated that the prices indicated included the tax, as had the previous catalogues. The tax included in making up the price lists for the previous catalogues undoubtedly was computed on the basis of the selling prices of Bourjois, Inc., and Barbara Gould, Limited, which prices would correspond closely to the present selling prices of the sales corporations less the amount added to cover the tax. It is to be assumed, therefore, that the prices now charged by

the sales corporations include an amount equal to the tax computed on the selling price of the sales corporations, which price has been determined to be the selling price of the plaintiff, the manufacturer. It is evident that the sales corporations have collected the tax not only on the price at which the plaintiff sold to them, but also on the difference between such price and the price at which the goods were offered for resale by them. Bourjois, Inc., itself has not collected the additional tax. The sales corporations have. The effect is the same as though plaintiff had collected it.

Section 621 (d) of the Revenue Act of 1932, 26 U.S.C.A. § 1481 note, provides: "No overpayment of tax * * * shall * * * be refunded * * * unless the person who paid the tax establishes * * * (1) that he has not included the tax in the price of the article, * * * or (2) that he has repaid the amount of the tax to the ultimate purchaser." The purchaser having paid the tax, the plaintiff sustained no loss. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859.

For the reasons hereinbefore given, the complaint should be dismissed. Findings of fact and law are affixed hereto and are to be considered to be for and as a part of this opinion to meet the requirements of Equity Rule 70½ (28 U.S.C.A. following section 723).