### BOURJOIS, INC., v. McGOWAN.
### No. 453.

Circuit Court of Appeals, Second Circuit.
Aug. 17, 1936.

Olvany, Eisner & Donnelly, of New York City (Mark Eisner and Ferdinand Tannenbaum, both of New York City, and George R. Fearon, of Syracuse, N. Y., of counsel), for plaintiff-appellant.

Robert H. Jackson, Asst. Atty. Gen., Sewall Key, John M. Hudson, Clarence E. Dawson, and Frederic G. Rita, Sp. Assts. to Atty. Gen., George L. Grobe, U. S. Atty., of Buffalo, N. Y., and Goodman Sarachan, Asst. U. S. Atty., of Rochester, N. Y., for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellant paid to the defendant taxes for the month of September, 1932, which were assessed by the government on the sale price of toilet preparations manufactured by Bourjois, Inc., and sold during that month. The taxes were collected in accordance with the defendant's interpretation of the provisions of sections 603 and 619 of the Revenue Act of 1932 (26 U.S. C.A. § 1420 et seq. note) which are quoted:

"Sec. 603. *Tax on Toilet Preparations, etc.*

"There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 10 per centum of the price for which so sold: Perfumes, essences, extracts, toilet waters, cosmetics, petroleum jellies, hair oils, pomades, hair dressings, hair restoratives, hair dyes, tooth and mouth washes (except that the rate shall be 5 per centum), dentifrices (except that the rate shall be 5 per centum), * * * aromatic cachous, toilet soaps (except that the rate shall be 5 per centum), toilet powders, and any similar substance, article, or preparation, by whatsoever name known or distinguished; any of the above which are used or applied or intended to be used or applied for toilet purposes."

"Sec. 619. *Sale Price.*

"(a) In determining, for the purposes of this title, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for ship-ment, but there shall be excluded the amount of tax imposed by this title, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Commissioner, in accordance with the regulations.

"(b) If an article is—

"(1) sold at retail;

"(2) sold on consignment; or

"(3) sold (otherwise than through an arm's-length transaction) at less than the fair market price;

the tax under this title shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Commissioner."

The appellant is a corporation which manufactures cosmetics and toilet preparations of various kinds which, from the time it was organized and began doing business in 1929, it sold to the trade at prices it established, until it began to sell its products to two wholly owned subsidiaries which were organized in August, 1929. These two corporations were known as Bourjois Sales Corporation and Barbara Gould Sales Corporation. During the month in question they had separate books of account and separate bank accounts, and, though the same man was vice president and general manager of all three corporations and they all occupied the same building, they kept their transactions separate and distinct. The appellant rendered bills to the sales corporations and was paid by them in all respects, except perhaps as to the amounts, the same as it would have been had the sales been made to outsiders. Before this the appellant had paid the selling costs itself, but in this month all such costs were paid by the selling corporations which took over, for the most part, if not wholly, the appellant's sales force and sold the Bourjois products to the trade at the same prices at which the appellant had previously sold them. The appellant sold its products to the sales corporations at cost plus 1½ per cent. plus 10 per cent., and insists that such prices are those upon which the tax is laid. The defendant collected taxes based on the prices the sales

corporations charged the trade computed upon the sales volume of the sales corporations for that month; those being the prices determined by the Commissioner to be the ones at which the articles were sold by the manufacturer in the ordinary course of trade. The difference is the amount now in controversy.

It appeared that the prices charged the sales corporations were about the same, though often slightly more, than the appellant charged foreign corporations to which it made some sales of its products during the month, and that these foreign corporations owned no shares of stock in the appellant corporation nor it in them. It likewise was sufficiently shown that all the appellant's products could easily be duplicated by any other competent manufacturer of like articles, and that their manufacture and sale at the prices charged by the appellant would leave the manufacturer a fair margin of profit. But it was also proved that when by advertising, or otherwise, a trade-name had been established as a mark of distinction under which such articles were in demand for sale to the retail trade, it was customary to charge for them "whatever the traffic would bear," and that the demand for them at such prices was great. The appellant owned exclusively the right to control the sales of its products under the well-known and valuable trade-names used in their sale.

From all this it appears that the real issue here is what is meant by the fair market price in section 619 (b) (3) of the 1932 act (26 U.S.C.A. § 1420 et seq. note) above quoted, and whether "the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Commissioner," as provided in section 619 (b), has been properly found and given effect, for it is both clear and undisputed by the appellant that its sales to its wholly owned subsidiaries were not through arm's length transactions. And it was, consequently, a case calling for the application of a price determined by the Commissioner to be that prevailing in the ordinary course of trade.

There are two aspects to the problem. If we are to treat the products of the appellant as merely the equivalent of commodities composed of their ingredients mixed or blended into toilet preparations suitable for sale and use as such, there can be no doubt that the evidence shows that the appellant sold them to its sales corporations at the fair market price. There was ample proof that no secret formulas were used and that other similar manufacturers, not owning trade-names, could and would make them for anybody for the same prices. In this view of the matter, the question of price in the ordinary course of trade under section 619 (b) would not arise, for, even though the sales to the sales corporations were not arm's length transactions, they were not "at less than the fair market price" so as to fulfill the other condition of section 619 (b) (3).

But to take the appellant's products as mere unnamed blends, mixtures, or compositions salable to the trade as such at the time the appellant sold them is to ignore the very thing which gave them their peculiar sales value; that is, the trade-names under which they were sold not only eventually to the wholesalers, retailers, and consumers but by the appellant itself to the sales corporations. In September, 1932, no change had taken place, so far as shown, to vary the prices at which the appellant could sell its distinctively named products. The only change had been the creation of wholly owned subsidiaries to which it was willing to sell at lower prices than it had been obtaining and presumably could have then obtained had it seen fit to do so. Its own previous business experience right up to the time the sales corporations were created had established the fair market price for its distinctively named products, and the Commissioner was justified in determining that in September, 1932, there being no change in market conditions but simply a change in selling methods, the fair market price of these same products continued to be what it had been immediately preceding the change in the method of selling. Especially is this so since it was proved that the sales corporations sold the products in September at the same prices the appellants had previously sold them. So the sales to the sales corporations were not only not arm's length transactions, as all now agree; but were justifiably found to be "at less than the fair market price."

 And in the light of this justified conclusion the Commissioner was required to determine the price at which such articles were sold in the ordinary course of trade by the manufacturers or producers thereof. The court below decided that the

price on which the taxes were collected was proved correct, and as the determination is supported by the evidence, it must be accepted. Dooley v. Pease, 180 U.S. 126, 131, 21 S.Ct. 329, 45 L.Ed. 457; Hathaway v. First Nat. Bank, 134 U.S. 494, 498, 10 S.Ct. 608, 33 L.Ed. 1004; McKinley Creek Min. Co. v. Alaska United Mining Co., 183 U.S. 563, 22 S.Ct. 84, 46 L.Ed. 331; Runkle v. Burnham, 153 U.S. 216, 14 S.Ct. 837, 38 L.Ed. 694; Payne v. Haubert (C.C.A.) 277 F. 646. On this question, which is but a variation of the previous determination that the sales made not at arm's length were at less than the fair market price, the same evidence that this taxpayer had just previously been selling the same kind of products it sold in September, 1932, at the prices on which the taxes were assessed and collected, coupled with the fact that the sales corporations actually sold the goods in that month at those prices, supports the conclusion that the taxes were computed on the prices at which such articles were being sold in the ordinary course of trade by the manufacturers or producers thereof. On the appellant rested the burden to show that the taxes sought to be recovered were assessed and paid contrary to the statute, and it failed to do that in failing to show that the determination of the Commissioner was wrong. Consequently it proved no overpayment of taxes and no cause of action against the defendant.

Affirmed.

MANTON, Circuit Judge dissents without opinion.