### MEHRLUST v. HIGGINS, Collector of Internal Revenue.

District Court, S. D. New York.
Nov. 2, 1939.

Andrew B. Trudgian, of New York City (Andrew B. Trudgian and David J. Levy, both of New York City, of counsel), for plaintiff.

John T. Cahill, U. S. Atty., for Southern District of New York, of New York City (Noel Hemmendinger, Asst. U. S. Atty., of New York City, of counsel), for defendant.

CLANCY, District Judge.

Plaintiff seeks to recover taxes in the sum of $29,595.65 imposed upon him under § 605 of the Revenue Act of 1932, 26 U.S. C.A. following section 1481, which prescribes a manufacturers excise tax on jewelry. The tax covers sales which the Government claims were made by the plaintiff during a period from June 21, 1932 to June 22, 1936. The section of the law involved was enacted on June 6, 1932 and became effective on June 21, 1932. It placed a ten percent tax on the price of articles of jewelry sold by a manufacturer.

These facts appear in an agreed statement. The plaintiff, long prior to June 6, 1932, was engaged as sole proprietor of his business in the manufacture and sale of jewelry at New York City. On June 17, 1932 J. Mehrlust, Inc., was organized under the Laws of New York State, with an authorized capital of 1,000 shares of no par value stock and on or about June 18, a single certificate of 500 shares was issued to the plaintiff in consideration of $2,500 paid by him in cash. At that time, plaintiff became and he has since continued to be the sole stockholder of the corporation and the only salaried officer thereof. It does not appear in the record whether there have been any other officers nor who they were. On June 18, plaintiff executed to J. Mehrlust, Inc., a bill of sale conveying to the corporation articles of manufactured jewelry owned by him at his inventory price of $628,243. $2,000 of this amount was paid in cash and the balance by a demand note bearing no interest. The corporation paid the note in part by assuming a debt of plaintiff in the sum of $235,000 payable to various banks. The corporation gave its notes, endorsed by J. Mehrlust, to the banks in place of the individual's notes.

This transfer of merchandise from the individual to the corporation was the only such transaction between them. Several purchases of merchandise were subsequently made from others by the corporation. Subsequent to the transfer, the corporation sold the articles included in the bill of sale of June 18 and these sales were regularly entered in the corporation's books. It does not appear whether or not the customers of the corporation were only those previously doing business with the individual, although it does appear that some of the corporation's accounts were with individuals who had previously dealt with him. Some articles which were unsalable were transferred back to J. Mehrlust who refabricated and sold them. Such retransfers were recorded in the stock book of J. Mehrlust, Inc., with the notation "J.M.", sometimes accompanied by the legend "sold to" and at other times by the legend "charged to" but no entries were made in the corporation sales book or the individual's purchase book and they were entered in the individual's journal under the designation "intercompany account." The corporation kept a complete set of books since its inception and bore its own operating expenses including rent, clerical hire, selling costs, and so forth. These items were paid for by the individual who in turn was recompensed by the corporation for its allocated share. The clerical force and office space used by the corporation were substantially the same as that used by the individual prior to June 18, 1932 but it does not appear whether or not these became and continued to be wholly or partly common to both after that date. The articles sold by the corporation to the trade were invoiced under the corporate name on forms previously used by the individual but to which was added a stamped "Inc." which, in a few instances, was inadvertently omitted. Some checks came in payable to the corporation and some to the individual. Of the latter, some were endorsed by the individual and deposited in the corporation account and others were sent back to the customers to be redrawn. The corporation maintained a separate bank account where all monies received by it were deposited and where all monies disbursed by it were withdrawn. The corporation has filed a separate Federal Income Tax return, Federal Capital Stock Tax return and State Franchise Tax return. The corporation never had a telephone listing or a listing in the directory located in the

lobby of the building in which it was situated. Admittedly, the corporation never manufactured, produced or imported any articles taxable under § 605 of the Revenue Act. However, the plaintiff was taxed for all articles which were transferred by him to the corporation on June 18, 1932 and subsequently sold by the corporation. The amount of the tax was not included in the price of $628,243 at which the articles were transferred to the corporation and the plaintiff has not been reimbursed for any part of the taxes nor have they been charged to the corporation. The tax was paid under protest, claim made for refund which was rejected and this suit followed.

■ The sole question to be decided here is whether or not the sale was bona fide. We are not confronted here with any of the questions involved in § 619 (b) (3) of the Revenue Act of 1932, 26 U.S.C.A. following section 1481, which appeared in several cases cited by the Government. Bourjois, Inc., v. McGowan, D.C., 12 F. Supp. 787, affirmed 2 Cir., 85 F.2d 510; Inecto, Inc., v. Higgins, D.C., 21 F.Supp. 418; E. Albrecht & Son, Inc., v. Landy, D.C., 27 F.Supp. 65. The taxpayers in the cited cases had indulged in continuous dealings after the effective date of the statute so that the issue was the price as much as the sale. That section expressly requires "arm's length" transactions. We are here concerned with a transfer which is of a type or has a quality certainly but for which no statutory provision pretends to prescribe a type or quality. If we were compelled to require an over-the-counter sale to defeat, when the law became effective, a tax on the later disposition of the merchandise, we would consider the Government's contention a more substantial one. Here, the plaintiff completely divorced himself of all title to the merchandise. In exchange, he received a valuable consideration; a sum equal to the inventory values determined before the law was passed and which could not be characterized as unfair. Third persons received some of the benefits of the consideration inasmuch as the corporation gave its notes,

endorsed by the plaintiff, to banks which were creditors of the plaintiff. While the corporation had no separate building or telephone directory listings, it clearly kept a complete and distinct set of books as well as its own bank account. There is nothing in the record to indicate that the corporation, as such, did not have and exercise full power and control over the merchandise transferred. We think that the facts clearly demonstrate a bona fide sale between two separate legal entities.

■ This conclusion defeats any contention that the corporation was a mere sales agency for the taxpayer especially in view of the fact that no other merchandise manufactured by plaintiff, other than that included in the one transaction, was ever disposed of through the corporation.

Among the numerous cases which the Government cites, to support its position, two are pressed for our consideration as having enough likeness to constitute them authorities. They are Continental Oil Company v. Jones, D.C., 26 F.Supp. 694 and E. Albrecht & Son v. Landy, supra, in so far as it holds the alleged transaction of June 20, 1932 insufficient to avoid a subsequent tax. In each of those cases we have an accumulation of facts different from those in this case. Furthermore, in the Continental Oil case, the Court found substantial failure of consideration and that the taxpayer had retained for itself control of the gasoline and oil purportedly sold. In the Albrecht case, the Court found that goods allegedly sold were not in a deliverable state; that the consideration was stock; that important elements in the sale were not included in the price; that, continuously after, the manufacturing company sold only to the sales company on a basis warranting the conclusion that the subsidiary company was only an agent; and that a review of all their intercompany deals made the original transfer dubious and so taxed it. We find no such elements in the case we are deciding.

Entry of judgment for the plaintiff for the full amount, with interest, is directed.