### ETABLISSEMENTS RIGAUD, Inc., v. HOEY.

District Court, S. D. New York.

Nov. 2, 1942.

cosmetics and toilet preparations. It made returns of sales for the period in question and paid taxes thereon. Later, the books of the corporation were audited by the commissioner, and additional taxes of $13,521.45 were assessed, with interest of $2,188.48, or a total of $15,709.03.

The plaintiff paid the additional taxes under protest on August 28, 1936, and thereafter filed a claim for refund, which was rejected a few days after the present action was commenced. The claim for refund contained no showing that the plaintiff had borne the burden of the taxes as required by Section 621(d) of the Revenue Act of 1932, 47 Stats. Sess. 1, ch. 209, § 621, 26 U.S.C.A. Int.Rev.Acts, page 621, and applicable regulations.

The plaintiff marketed its entire product through E. Fougera & Co., Inc. (hereinafter referred to as "Fougera"), a New York corporation, under an arrangement by which Fougera was paid a commission of 20% on the amount of all sales. In its original returns, the plaintiff treated Fougera as the first purchaser of the merchandise, and computed the tax on the net sales price to that company, after deduction of the 20% commission. The commissioner in the reassessment found that the so-called "sales" to Fougera were otherwise than at arms length, and the price less than the fair market price. He accordingly based the tax on the price at which the merchandise was sold to the trade, without deduction of the 20% commission. This accounted for about one-third of the additional taxes.

The remainder of the assessment concerned transactions whereby the plaintiff supplied large quantities of perfume for distribution in connection with radio broadcasts sponsored by Corn Products Refining Company. The commissioner determined that these transactions resulted in sales by the plaintiff, and assessed additional taxes on the amount received by the plaintiff after deduction of parcel post charges.

The plaintiff was formed on July 27, 1933, by the merger of Parfumerie, Rigaud, Inc., and Laboratoire de Pharmacologie, Inc., both New York corporations, dominated by French interests. Parfumerie Rigaud, Inc., was organized in 1924, and from then until the time of the merger was engaged in the manufacture in the United States of toilet preparations under formulas and trade-names originally acquired from Hen-

Walter L. Post, of New York City (Edward Holloway, of New York City, of counsel), for plaintiff.

Mathias F. Correa, U. S. Atty., of New York City (William L. Lynch, Asst. U. S. Atty., of New York City, of counsel), for defendant.

COXE, District Judge.

This is an action to recover $15,709.93 alleged to have been erroneously collected as manufacturer's excise taxes for the period from June 21, 1932, to July 31, 1935, under Section 603 of the Revenue Act of 1932, 47 Stats.Sess. 1, ch. 209, § 603, 26 U.S.C.A. Int.Rev.Acts, page 608.

The plaintiff is a New York corporation engaged in the manufacture and sale of

ri Rigaud, a French citizen; about 95% of the stock of the company was held by a Swiss corporation under a transfer from Henri Rigaud. Laboratoire de Pharmacologie, the other party to the merger, was a manufacturer of drugs. After the merger, about 68% of the common stock of the plaintiff was held by the Swiss corporation and about 18% by Henri Rigaud.

Fougera was organized in 1912, and is controlled by members of the Sterling family. None of the stock is owned by any of the Rigaud interests. The main business consists of the importation and sale of pharmaceutical products.

As a result of the merger, Fougera became the owner of 600 shares of the plaintiff's preferred stock out of 2,880 shares outstanding, and M. M. Sterling, a president of Fougera, became the owner of 221⅖ shares of common stock out of 9,102 shares outstanding. Fougera and the plaintiff also had some common officers and directors; M. M. Sterling, president and a director of Fougera, was 1st vice president and a director of the plaintiff; and W. B. Baker, vice president and a director of Fougera, was secretary, assistant treasurer and a director of the plaintiff.

Prior to 1927, the Rigaud line was distributed in the United States through George Borgfeldt & Co., and Fougera acted as "financial agent" for the French interests involved. In 1927, the Borgfeldt agency was terminated, and Fougera became the exclusive distributor of all Rigaud products in the United States under an agreement by which it was to receive a "20% commission on the net amount of all goods invoiced" to it.

This arrangement with Fougera continued until June, 1933, when an agreement was entered into between the various Rigaud interests and Fougera for the merger of the two New York Rigaud corporations. This agreement provided that Fougera would continue to act as "sole sales representative" of the new corporation for the same commission as theretofore paid, that for two years no money would be expended by the new corporation without the approval of Fougera, and that Fougera would furnish any needed working capital as long as it had financial control of the business.

The method followed by Fougera in making sales was the same before the merger as after. It is unnecessary, therefore, to differentiate between the two periods. The plaintiff fixed the retail prices for all Rigaud products. Orders were taken by Fougera and transmitted to the plaintiff, where they were filled, packaged, and shipped to the respective customers or to Fougera, as directed by Fougera. Invoices to customers were, however, made out in the name of Fougera, and credit risks were assumed by it.

At the end of each month the plaintiff billed Fougera for the total monthly shipments, and on the 10th of the month following Fougera credited the plaintiff on its books with the net amount shown to be due, less Fougera's commission.

The plaintiff itself had no bank account of its own but only a drawing account with Fougera. In the current telephone books for the period, the plaintiff was listed as "Rigaud Perfumery, 79 Bedford, Walker 5-4020"; it also appears under the Fougera listing as "Parfumery Div. 79 Bedford, Walker 5-4020". The invoices used by Fougera was headed "E. Fougera & Company, Inc. Parfumerie Division, 79 Bedford St. at Barrow St., New York", and they also carried the plaintiff's telephone number.

The facts relating to the Corn Products Refining Company transactions are as follows: In February, 1934, Fougera entered into an agreement with Corn Products to furnish 100,000 bottles of "Rigaud Parfum Un Air Embaume" for distribution in connection with radio broadcasts sponsored by Corn Products. The agreement provided that in order to obtain one of these bottles a radio listener would be required to send in a request accompanied by a remittance of 10 cents to cover "postage and handling costs".

In October 1934, a second agreement was entered into between Fougera and Corn Products, in which Fougera undertook to furnish for distribution in connection with additional radio broadcasts 100,000 bottles of "Mary Garden Parfum" at 13 cents a bottle, 10 cents to be paid by the radio listener and 3 cents by Corn Products. A third agreement was entered into in March, 1935, directly with the plaintiff, in which a further quantity of "Mary Garden Parfum" was to be supplied at 14 cents a bottle, of which 4 cents was to be paid by Corn Products. Both the "Rigaud Parfum Un Air Embaume"

and the "Mary Garden Parfum" were regular products of the plaintiff.

In actual operation under these agreements, the requests for perfume sent in by radio listeners, accompanied by the required 10 cent payments, were received at a post office box maintained by Corn Products. The envelopes were brought from there to the plaintiff's place of business where they were opened, and the coins and stamps turned over to Fougera. The plaintiff then packaged and mailed out the bottles with Rigaud advertising matter enclosed. When, in the later agreements, the price of the perfume was raised to 13 and 14 cents, the excess over 10 cents was billed by Fougera directly to Corn Products. Fougera, in its accounts with the plaintiff, credited the plaintiff with whatever was received, less the 20% commission.

■ 1. Section 621(d) of the Revenue Act of 1932, 47 Stats. Sess. 1, ch. 209, § 621, provides that no overpayment of tax shall be refunded unless the person paying the tax establishes in accordance with regulations prescribed by the commissioner "(1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee". Article 71 of Regulations 46 provides that no refund shall be allowed unless the taxpayer files a sworn statement "establishing (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee". The claim for refund in the present case makes no showing whatever that the plaintiff has borne the burden of the tax; there is not even a bare assertion to that effect, such as was present in Samara v. United States, 2 Cir., 129 F.2d 594. This statutory requirement was not waived by the commissioner, who never even examined the claim on the merits, but merely rejected it because suit had already been started. On this showing, it is difficult to see how the suit can be maintained. L. T. Piver,

Inc., v. Hoey, 2 Cir., 101 F.2d 68; Samara v. United States, supra.

■ 2. On the merits, I think the additional taxes were rightly assessed. Fougera, in fact, was merely a sales agent for the plaintiff. This is apparent not only from the language of the agreements, but from the whole course of dealing. The "commission" paid Fougera in making sales was, therefore, not deductible in computing the amount of the taxes. Inecto, Inc., v. Higgins, D.C., 21 F.Supp. 418, 424; Luzier's Inc., v. Nee, D.C., 24 F.Supp. 608, 611, affirmed 8 Cir., 106 F.2d 130. If I am wrong in thinking that Fougera was merely a sales agent for the plaintiff, the assessment may still be upheld on the ground that the sales were otherwise than at arms length, and the price less than the fair market price. The relation existing between the two companies was not only extremely close but, after the merger, Fougera had almost complete control of the plaintiff's finances. Furthermore, the two companies had interlocking officers and boards of directors, and Fougera held the plaintiff out to the public as its own "Parfumerie Division". I think, therefore, that the commissioner was warranted in assessing the taxes on the basis of prices at which the different products were sold to the trade without deduction of the Fougera commission. Bourjois, Inc., v. McGowan, 2 Cir., 85 F.2d 510.

■ 3. The receipts from the Corn Products transactions were properly taxable. The bottles of perfume which were supplied by the plaintiff for distribution in connection with the radio broadcasts were neither gifts nor payments for personal services. They were sold at prices ranging from 10 cents a bottle to 14 cents; and the receipts found their way into the plaintiff's treasury, less the Fougera commission. The very fact that Fougera was paid this commission indicates that the transactions were regarded as sales.

There may be a decree for the defendant dismissing the complaint, with costs.