### DE NOBILI CIGAR CO. v. UNITED STATES.

### No. 28.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1945.

Kenneth Carroad, of New York City (Joshua Peterfreund, of New York City, on the brief), for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Frederic G. Rita, Sp. Assts. to the Atty. Gen., and Harold M. Kennedy, U. S. Atty., and Frank J. Parker, Asst. U. S. Atty., both of Brooklyn, N. Y., for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

By this action the plaintiff seeks the recovery of floor stocks taxes illegally exacted under the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq., which was held unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. As a condition to the recovery of such taxes, section 902 of the Revenue Act of 1936, 49 Stat. 1747, 7 U.S. C.A. § 644, imposed the requirement that the claimant establish to the satisfaction of the Commissioner of Internal Revenue or of the trial court that he had borne the burden of the tax and not shifted it to others. The validity of this legislation was sustained in Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. In the case at bar the taxes paid by the plaintiff amounted to $48,301.96, of which $310.26 was a tax on smoking tobacco and $47,991.70 a tax on cigars on hand on October 1, 1933. The average tax per thousand cigars was almost exactly 80 cents. The taxed cigars were sold during the period from October 1, 1933, to March 1935,

which will be referred to as the tax period. The plaintiff duly filed with the Commissioner a claim for refund of the taxes which was rejected on December 1, 1939. Thereafter this action was brought in the court below. It resulted in dismissal of the complaint, the trial judge making a finding that "on the 3rd day of October 1933, two days after the incidence of said floor stocks tax, the plaintiff raised its selling prices of the products manufactured by it from the tobacco upon which the said floor stocks taxes were paid by a total amount in excess of the amount of the floor stocks taxes paid."

In its appeal the plaintiff urges three points: (1) That the District Court erred in treating the court proceeding as a review of the Commissioner's decision instead of a trial de novo; (2) that the finding that the plaintiff's selling prices were increased by an amount in excess of the taxes paid is clearly erroneous, since undisputed evidence shows that the increase amounted to only 26 cents per thousand cigars while the tax paid on the cigars was 80 cents per thousand; and (3) that the increase of 26 cents was due to factors other than the tax and hence plaintiff is entitled to a refund in full of the tax paid on cigars.[1]

■ In his opinion the District Judge quoted a dictum of this court in Samara v. United States, 2 Cir., 129 F.2d 594, 598, certiorari denied 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549, that "The court proceeding is intended only as a review of the Commissioner's decision," and said that the plaintiff was required to carry the burden "both before the Commissioner and in this court, of showing that it had not been relieved from the said tax nor reimbursed therefor, nor shifted such burden directly or indirectly." But even if we assume that the Samara dictum is contrary to the decision in Bethlehem Baking Co. v. United States, 3 Cir., 129 F.2d 490, and is as wrong as the appellant argues, we cannot see that the District Judge applied the dictum to the detriment of the plaintiff. He allowed the plaintiff to put in evidence whatever it offered, and his conclusions of law make no reference to the Commissioner's rejection of the claim for refund but state (conclusion No. 3) that the plaintiff has failed to sustain the burden imposed by section 902

of the Revenue Act of 1936 of establishing "to the satisfaction of the Court" that it had borne the burden of the taxes. So far as the record discloses the plaintiff was accorded a trial de novo. Therefore affirmance or reversal of the judgment of dismissal must turn on whether the court's conclusion that the entire amount of the floor stocks taxes was shifted to the plaintiff's vendees was correct.

■ The record consists of a small amount of testimony and a great mass of exhibits. From the testimony of Mr. Moltani, the plaintiff's general sales manager, it appears that from 1918 to about the middle of 1932 the plaintiff marketed its cigars under a "wholesale method" of distribution, that is, it sold to jobbers or to agents; about the middle of 1932 it changed to a "retail method", that is, it sold directly to retailers at prices apparently lower than its former prices to jobbers but actually netting more because of the discounts allowed jobbers under the wholesale method; and then on October 3, 1933, the wholesale method was resumed and the former price of $37.50 per thousand cigars was re-established for the plaintiff's chief brands. That the plaintiff did change from the wholesale method to the retail and then back to the wholesale at about the dates mentioned is further substantiated by the claim for refund which the defendant introduced as its exhibit P. Mr. Moltani testified that the average selling price for cigars sold during what is called the "base period", that is, from October 1, 1932, to September 30, 1933, was $34.79 per thousand; and the average selling price during the "tax period", that is, from October 1, 1933, to March 1, 1935, was $35.05 per thousand, and, if the tax period be extended to May 31, 1935, the average selling price was $35.02. If the base period price of $34.79 be compared with the tax period price of $35.05 it shows an increase of only 26 cents, and the appellant argues that the remaining 54 cents of the 80 cent tax was absorbed by it so that it is entitled at the least to a refund of $32,443.39 of the total tax paid. The government's witness Mr. Taylor, who had audited the books and sales records of the plaintiff, testified on direct that the average price received by the plaintiff for its cigars dur-

---

[1] The appellant does not now claim a refund of the tax of $310.26 on smoking tobacco. Its reply brief states that "the 'smoking tobacco' phase of the case was waived at the Trial and thereafter."

ing the tax period was $36.40 per thousand, but on cross-examination he explained that this figure included commissions averaging $1.38 per thousand. Deducting the latter figure from the former would leave a net average sales price of $35.02 which tallies with Moltani's testimony. With respect to the base period Taylor testified that the "average invoice price" received during that period was $35.66. In this figure there is no deduction for commissions and the witness never said what they amounted to; consequently it is impossible to use his testimony either to corroborate or to contradict Moltani's base period figure of $34.79. The appellant says that since Moltani was neither impeached nor contradicted the District Judge was obliged to accept that figure. We do not think so. The claim for refund (Defendant's Exhibit P) in schedule D-2, sheet 9 shows an average sales price per thousand of $34.2491 for the year 1932, while schedule D-1, sheet 4, shows an average sales price for the tax period of $35.982. These two average sales figures apparently indicate an increase in sales price of at least $1.73. The appellant's reply brief says that this computation, made in 1937, "did not give complete effect to the various discounts, commissions, allowances, etc. in either the base period or the tax period," and that this material was subsequently corrected by both the government's accountants and the plaintiff's, as indicated by the fact that both witnesses agreed on $35.02 as the net figure for the tax period. But as already noted there is no evidence the witnesses were in agreement on the net figure for the base period; nor is any explanation offered of the disparity between Moltani's figure of $34.79 and the admission of the refund claim that the net figure was $34.2491. Moreover, Moltani testified that the net price the plaintiff was getting previous to October 1, 1933, "was $34.70 with 2 per cent. off, or $34 a thousand." As to such sales there was a spread of $1.02 between the base period price and the tax period price. Mr. Moltani gave no explanation of how he arrived at the figure $34.79 and the numerous price lists and other exhibits do not explain it. Furthermore, there are passages in the correspondence introduced by the government from which an inference may not unreasonably be drawn that the plaintiff was intending to pass on the tax. On the whole record, which we have studied with care, we cannot say that the court was in error in concluding that the plaintiff had failed to carry the burden of establishing to the satisfaction of the court that it had borne the burden of the taxes or any part thereof.

Judgment affirmed.