## PROFESSIONAL GOLF CO., Inc., v. NASHVILLE TRUST CO.

### No. 2685.

District Court, M. D. Tennessee, Nashville Division.

Feb. 9, 1945.

Fred M. Williams, of Chattanooga, Tenn., for plaintiff.

A. O. Denning, Asst. U. S. Atty., of Nashville, Tenn., and Courtnay C. Hamilton, of Washington, D. C., for defendant.

DAVIES, District Judge.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact.

1. This suit was commenced August 9, 1938. The plaintiff seeks to recover $1,400 (with interest), claimed to have been overpaid as manufacturers' excise tax on sporting goods manufactured and sold by the plaintiff under Sec. 609 of the Revenue Act of 1932, C. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 612, for the period June, 1932, to May, 1936, inclusive.

2. On May 14, 1931, the plaintiff, Professional Golf Company, Inc., was incorporated under Tennessee law for the purpose of importing, manufacturing and selling golf clubs and golf accessories. Plaintiff was engaged in such business during the taxable period involved. The only product manufactured and sold by the plaintiff during the taxable period was golf clubs.

3. In May, 1932, J. Harkins, then president of plaintiff corporation, undertook the formation of a merchandizing and selling corporation for the purpose of disposing of the plaintiff's manufactured products. The organization of the selling corporation under Tennessee law was completed on or about July 1, 1932, as the Professional Golf Company of America.

4. Upon the organization of the selling corporation, J. Harkins was the president, treasurer, and sales manager of both corporations, and I. Alsup was the secretary of both corporations. J. Harkins remained as president of both corporations until November 1, 1935, at which time he resigned as president of the selling corporation but retained his position as president of the manufacturing corporation and his position as sales manager of both corporations. I. Alsup was the secretary of both corporations throughout the entire taxable period and kept the books of both. The corporations occupied the same offices.

5. Throughout the taxable period J. Harkins and I. Alsup together constituted a majority of the Board of Directors of both corporations and managed the affairs of both. J. Harkins and I. Alsup were also large stockholders in both corporations.

6. Beginning in July or August, 1932, and throughout the taxable period, the manufacturing corporation sold to the selling corporation most of the golf clubs manufactured by it at cost plus 10%, plus the 10% tax, which was less than similar clubs could be purchased from other manufacturers of

golf clubs at that time and less than the manufacturing corporation had been receiving for the same or similar products prior to the organization of the selling corporation. J. Harkins fixed the prices at which golf clubs were sold by plaintiff to the selling corporation and also, the prices at which the selling corporation sold them. The record is silent as to how these prices were arrived at by Harkins, since it appears that the manufacturing corporation kept no cost records.

7. The manufacturing corporation filed its returns for the taxable period and paid the tax on the basis of the prices received by it from the selling corporation. The Commissioner determined that the sales of these products from the manufacturing corporation to the selling corporation were not arm's-length transactions and were at prices far less than their fair market price, and he further determined that the tax should be computed on the prices for which such articles were sold in the ordinary course of trade, and that the prices at which the selling corporation actually sold the articles to its customers truly reflected the prices for which such or similar articles were sold in the ordinary course of trade by manufacturers thereof. An additional tax was assessed on this basis of about $2,200. Interest was also assessed. Of this amount the plaintiff had paid $1,400 at the commencement of this suit.

8. Prior to the organization of the selling corporation, the plaintiff had acquired a registered trade-name or trade-mark applicable to its manufactured products called "First Flight" and had expended large sums in advertising and making it known throughout the nation. During 1932 the plaintiff and the selling corporation entered into an oral contract whereby the trade-name "First Flight" would be sold to the selling corporation, or at least the selling corporation would have the right to use the trade-name in marketing the products manufactured by the plaintiff. The terms of the contract are rather indefinite but the purchase price for the trade-name or the right to use it was to be $20,000 payable over a period which was also indefinite, when, as and if the selling corporation was able to pay. During the taxable period the following sums were paid under the oral contract: $6,200 in 1933, $3,000 in 1934, $4,512.88 in 1935, and $2,000 in 1936, a total of $15,712.88.

9. During the taxable period the total sales of golf clubs from the manufacturing corporation to the selling corporation, according to their books, amounted to $27,474.80. The same golf clubs were in turn sold by the selling company for a total of $49,365.30. The difference, $21,890.50, was the basis of the additional tax assessed by the Commissioner in 1937, which amounted, with interest, to $2,543.47, at the date of the assessment. The sums paid by the selling corporation to the manufacturing company for the trade-name or the use of the trade-name were not taken into consideration and not included in any computation as a part of the sale price of the golf clubs by either corporation or by the Commissioner for tax purposes.

10. The sales of golf clubs from the plaintiff to the selling corporation during the taxable period were made otherwise than through arm's-length transactions at less than the fair market prices therefor.

11. The prices obtained for the golf clubs by the selling corporation in sales to its customers represented the fair market prices.

12. The plaintiff has failed to establish any other figure that the Court could find represents the fair market value of the golf clubs during the taxable period.

13. The purpose and reason for the organization of the selling corporation was to keep down the prices of the golf clubs manufactured by the plaintiff so as to result in the payment of a small amount of manufacturers' excise tax.

14. The action of the Commissioner in using as the basis of the tax the price at which the selling corporation sold the golf clubs involved during the taxable period was not arbitrary or capricious. On the other hand, it was fair and correct and a proper basis for computing the tax.

### Conclusions of Law.

1. The plaintiff did not overpay the tax involved.

2. The plaintiff has not established by proof that it is entitled to recover any amount in this case or introduced proof sufficient to overturn the Commissioner's determination.

3. The suit should be dismissed at plaintiff's cost.

Judgment will be entered accordingly.