**STARDAY RECORDING AND PUBLISHING COMPANY, Inc.**

v.

**UNITED STATES of America.**

**Civ. A. No. 3874.**

United States District Court
M. D. Tennessee,
Nashville Division.

Dec. 7, 1967.

K. Harlan Dodson, Hooker, Keeble, Dodson & Harris, Nashville, Tenn., for plaintiff.

Gilbert Merritt, U. S. Atty., Nashville, Tenn., and H. Stennis Little, Department of Justice, Washington, D. C., for defendant.

## MEMORANDUM

FRANK GRAY, Jr., District Judge.

This action was brought by Starday Recording and Publishing Company, Inc. (hereinafter referred to as Starday) to recover excise taxes paid by it subsequent to an assessment by the Commissioner of Internal Revenue. The Commissioner determined that the selling price shown on plaintiff's books in connection with transactions with Starday International Sales, Inc. (hereinafter referred to as International) and the Nashville Music Agency, Inc. (hereinafter referred to as Agency) did not represent the fair market price of the phonograph records involved. He determined, further, that the prices received by International and Agency were the prices to be used in a computation of the tax. Consequently the ten per cent manufacturer's excise tax provided for by 26 U.S.C. § 4141 during the period involved was imposed on plaintiff on such basis.

In addition to the ostensible sales to International and Agency, Starday made fairly substantial sales, about twenty-five per cent of its dollar volume, direct to purchasers. It paid excise tax on such records on the basis of the sales price and the Commissioner accepted this computation. The prices at which these sales were made were about the same as the prices shown on the books as being charged to International and Agency and it is plaintiff's contention that these direct sales by Starday at such prices established that the prices charged on the books on transactions with International and Agency were, although admittedly not arms' length transactions, fair market prices.

Starday, International and Agency were, at all pertinent times, Tennessee

corporations. The sole stockholder in each corporation was Don F. Pierce, who was also President and Chairman of the Board of Directors of all three corporations. They occupied the same offices and although their employees were to some extent divided on the books, many of them received compensation from more than one of the companies and, as admitted in the proposed findings of fact submitted by plaintiff, for all practical purposes all of the employees of the three companies were available for additional services to the other companies.

The ostensible sales by Starday to International and Agency were handled as follows. Distributors who wished to purchase Starday records would send an order therefor to International. A master order form (with some nine slightly different copies) was prepared and some copies thereof were forwarded to the record pressing plant (non-affiliated corporations, usually in Cincinnati or Memphis) requesting that the order be filled and shipped directly to the distributor. The records ordered on this form were shipped by the pressing plant and the pressing plant then billed Starday—not International—for the records. After their shipment, International mailed an invoice (one of the copies of the master order form) to the distributor and at that time made a memorandum accounts receivable entry on its books. At the end of each month, all returned records (all distributors had a hundred per cent refund privilege) were totaled and the total was subtracted from the memorandum accounts receivable on International's books.

No sale was recorded by International until it received payment for the records. When such payment was received International would make an entry on its books showing an accounts payable in favor of Starday and at that time International would make an entry on its books showing the purchase of the records from Starday. At this time also Starday would make its first entry on its books, creating an accounts receivable from International.

If a distributor never paid for records sent to it, International never made any record that a sale had been made by it or that a purchase had been made by it from Starday and Starday never made an accounts receivable entry showing that International owed it anything.

International did not pay Starday in a routine fashion after receiving payment from distributors but a bookkeeper would from time to time issue a check on International's bank account, payable to Starday, and then the same bookkeeper would record its receipt on Starday's books and deposit it in a Starday bank account. Transactions with Agency were conducted in the same manner as above set forth except that the sales were very much smaller and purchasers billed by Agency were apparently a different type from the distributors billed by International.

The direct sales by Starday, relied on by it to show the establishment of a fair market price on its records, were entirely different. Such sales were not to distributors, with return privileges, but were primarily sales to corporations, i. e. Kroger, for premium or promotional purposes, or sales of records to artists to be sold autographed at personal appearances, or sales to bookers or promoters of country music shows for sale at performances.

■ Based on the foregoing, the Court finds that there was no bona fide sale from Starday to either International or Agency before the purchasers who ostensibly bought from International or Agency made such purchases. Further, the Court finds that Starday has not shown that the use of the related corporations, International and Agency, served any bona fide business purpose and has not shown that these related separate corporations were not employed principally for the purpose of attempting to reduce taxes.

■ The Court further concludes that pursuant to the provisions of 26 U.S.C. § 4216(b) (1) (C) the Commissioner was authorized to determine the price for which such articles were sold in the ordi-

nary course of trade by manufacturers or producers thereof and was correct in his use for purposes of such computation of excise tax the prices at which the related companies (International and Agency) sold to independent purchasers. Bourjois, Inc. v. McGowan, 12 F.Supp. 787 (1935), affirmed 85 F.2d 510, cert. denied 300 U.S. 682, 57 S.Ct. 753, 81 L.Ed. 885; Professional Golf Company, Inc. v. Nashville Trust Company, D. C., 60 F.Supp. 398 (1945); and Kin-Septic Company v. United States, D. C., 64 F. Supp. 142 (1946).

The foregoing will constitute findings of fact and conclusions of law herein.

Judgment will be entered for the defendant.