**Rolland O. BAUM and Beatrice M. Baum**

**v.**

**UNITED STATES of America.**

**Civ. No. 4300.**

United States District Court
M. D. Tennessee,
Nashville Division.

May 3, 1968.

D. L. Lansden and Lawrence Dortch, Waller, Lansden & Dortch, Nashville, Tenn., for plaintiffs.

Gilbert Merritt, U. S. Atty., and Kent Sandidge, III, Asst. U. S. Atty., for defendant.

## MEMORANDUM

FRANK GRAY, Jr., District Judge.

This civil action was instituted by Rolland O. Baum[1] (hereafter the taxpayer) for a refund of income taxes and interest paid in response to an assessment by the Commissioner of Internal Revenue. The controversy arises out of amounts unreported on taxpayer's 1959 income tax return which he received as reimbursement for moving expenses and for the loss on the sale of his personal residence incurred when he was transferred by his employer to a new post with a subsidiary corporation. The Commissioner, treating these amounts as includable in gross income under § 61(a)(1) of the Internal Revenue Code (hereafter the Code), 26 U.S.C. § 61, assessed a deficiency for the aggregate reimbursement. This deficiency assessment was paid under protest and a claim for a refund was filed. Upon the Commission-

---

1. Beatrice M. Baum, taxpayer's wife, is a party to this suit because a joint return was filed for the year in question.

er's denial of this claim, this action was commenced. The cause is now before the court on the motions of both parties for summary judgment.

## I

As of November, 1957, the taxpayer was employed by the Merritt-Chapman & Scott Corporation (hereafter Merritt) as an executive vice president in its New York office and was residing, as he had for the preceding three years, at 535 Alda Road, Mamaroneck, New York. He was officially informed of his new assignment with Tennessee Products and Chemical Corporation (hereafter Tennessee Products), a Merritt subsidiary, by M. G. Staub, treasurer of Merritt, in a letter of November 25, 1957, which, in pertinent part, stated the following:[2]

"I have been instructed by Mr. Louis E. Wolfson, Chairman of the Board and President [of Merritt] to assign you to Tennessee Products * * * as Executive Vice President and General Manager as soon after the first of the year [1958] as possible.

\* \* \* \* \* \*

"In regard to your home here in New York, the Company will arrange to reimburse you for any loss in its sale as well as sale costs, duplication of living expenses during relocation, moving expenses, etc. if it is determined that this move is to be permanent. Details of these arrangements should be worked out with Bob Harvey [a Merritt officer] and Myself."

Pursuant to this letter, taxpayer moved to Nashville to begin his temporary assignment. In January, 1958, when this assignment was made permanent, he resigned as an officer of Merritt and entered into an agreement with Tennessee Products relative to the sale of his New York residence. In sub-stance, this agreement provided that, in consideration of accepting Nashville as his permanent "post of duty," Tennessee Products would, upon proper notice and demand, reimburse taxpayer for any loss incurred on the sale of his New York home which for this purpose was valued at the taxpayer's cost, including improvements, of $76,699.29.

In July, 1958, taxpayer sold his New York home at an $18,755.54 loss and shortly thereafter moved his family and their household and personal effects to Nashville at a cost of $2,540.45. In 1959, Tennessee Products reimbursed him both for his moving expenses and the loss sustained on the sale of his home; however, neither amount was reported in taxpayer's income tax return for that year. After an audit, the Commissioner concluded that both amounts were additional compensation includable in taxpayer's gross income for 1959 and assessed the applicable tax in the amount of $29,983.-34, including interest.[3]

Taxpayer paid this deficiency assessment May 21, 1963, and thereafter filed a timely claim for a refund in the amount of $15,637.00 which he maintains represents the overpayment of his 1959 income tax resulting from the inclusion of the reimbursements in question in his gross income for that year. Upon the denial of this claim, the instant action was instituted.

## II

As defined by § 61(a) (1) of the Code, "gross income" encompasses "all income from whatever source derived, including (but not limited to) * * * [c]ompensation for services, including fees, commissions, and similar items * * *." However, under Revenue Ruling 54–429 [4] the literal impact of this definition upon reimbursements for direct moving ex-

---

2. Apparently, this letter was preceded by and written in confirmation of certain preliminary discussions concerning this new assignment with Tennessee Products.

3. This amount includes various adjustments made by the Commissioner for the taxable years 1958, 1959, and 1960, as well as the taxes based upon the inclusion of the aggregate reimbursement figure of $21,295.99 in taxpayer's 1959 gross income.

4. 1954–2 Cum.Bull. 53, as amplified by Rev.Rul. 65–158, 1965–1 Cum.Bull. 34.

penses to certain employees has been somewhat lessened. In pertinent part, Revenue Ruling 54–429 permits an employee to exclude from his gross income amounts received as reimbursement for the costs of transporting himself and his immediate family and of moving their personal and household articles provided that: (1) he is an "existing employee," that is, an employee transferred by his present employer to a new post and (2) that such move is made primarily in the employer's interest.[5] The importance of the "existing employee" requirement is underscored by Revenue Ruling 55–140 [6] which provides, *inter alia*, that reimbursed direct moving expenses incurred by an employee in accepting a new employment constitute compensation includable in such a "new employee's" gross income.

Accordingly, the propriety of the characterization of the instant reimbursed direct moving expenses as compensation under § 61(a) (1) urged by the Commissioner turns upon whether taxpayer was a "new employee" of Tennessee Products or remained an employee of Merritt and, if the latter is the case, whether this new assignment was undertaken primarily for Merritt's benefit.

The Commissioner premises its contention that taxpayer was a "new employee" of Tennessee Products and, as such, is subject to the inclusive effect of Revenue Ruling 55–140, supra, upon the apparently separate corporate entities of Tennessee Products and Merritt. This assertion is not well taken.

During the period in question, 99.7 percent of the stock in Tennessee Products was owned by Merritt and all of the members of the board of directors of Tennessee Products with the nominal exception of the taxpayer were unquestionably officers or directors of Merritt.

Similarly, the executive committee of Tennessee Products which functioned as a policy-making body between board meetings was composed of the taxpayer and two officers or directors of Merritt and both it and the board of directors of Tennessee Products generally met in New York at the offices of Merritt. More important are the facts that the taxpayer was transferred to Tennessee Products by and at the initiative of Merritt; that the agreement to reimburse any loss on the sale of taxpayer's New York home was signed on Tennessee Products' behalf by R. E. Harvey, an executive vice president of Merritt; and that the taxpayer, although officially the President of Tennessee Products, was clearly under the supervision of and made monthly reports to officers of Merritt.

■ Based on the foregoing, it is the opinion of the court that the degree of supervision and control actually exercised by Merritt with respect to the taxpayer's ostensible employment by its subsidiary Tennessee Products during the period in question requires that the separate legal entities of these two corporations be disregarded. See Starday Recording & Publishing Co., Inc. v. United States, 281 F.Supp. 106 (M.D.Tenn. 1967). Accordingly, the court finds that taxpayer was an "existing employee" of Merritt within the meaning of Revenue Ruling 54–429, supra, that the transfer to Tennessee Products was primarily in Merritt's interest, and, therefore, that the reimbursed direct moving expenses in question are not includable in the taxpayer's gross income for the taxable year 1959.

### III

■ The issue presented by the reimbursement of the loss on the sale of the taxpayer's New York home is whether

---

5. "[A]mounts received by an employee from his employer representing * * * reimbursements for moving himself, his immediate family, household goods and personal effects, in case of a transfer in the interest of his employer * * * do not represent compensation within the meaning of * * * the Code, and are not includible in the gross income of the employee if the total amount of the reimbursement * * * * is expended for such purposes * * * *."

6. 1955–1 Cum.Bull. 317, as amplified by Rev.Rul. 59–326, 1959–2 Cum.Bull. 234.

this amount is additional compensation includable in his gross income for 1959. Although taxpayer's contentions in this respect are not without some persuasiveness,[7] it is clear that the weight of authority supports the Commissioner's position that a payment made by an employer to reimburse either a "new" or an "existing" employee for a loss incurred on the sale of his personal residence incident to a new assignment is compensation includable in the recipient's gross income under § 61(a) (1) of the Code. Bradley v. Commissioner of Internal Revenue, 324 F.2d 610 (4th Cir. 1963); Loflin v. United States, 19 Am.Fed.Tax. R.2d 1091 (W.D.Tenn.1967); Ritter v. United States, 393 F.2d 823 (Ct.Cl. April 19, 1968); Kobacker v. Commissioner, 37 T.C. 882 (1962). Accordingly, the court holds that the amount received as reimbursement for the loss taxpayer incurred on the sale of his New York home does constitute compensation includable within his 1959 gross income under § 61(a) (1) of the Code.

Counsel will submit an appropriate order within fifteen (15) days.

---

7. See the dissenting opinion in Bradley v. Commissioner, 39 T.C. 652 (1963), aff'd, 324 F.2d 610 (4th Cir. 1963).