473 F.2d 254
 73-1 USTC P 16,078
 HOFFMAN MOTORS CORPORATION, 1. (Successor to Hoffman-Porsche
Corp.), 2. (Successor to Hoffman Motors Eastern
Division, Inc.), 3. (Successor to
Hoffman Motor Car Co., Inc.),
Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 60, Docket 72-1418.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 18, 1972.
Decided Jan. 17, 1973.
 
 Howard L. Mann, Weiss, Bronston, Rosenthal, Heller & Schwartzman, New York City, for plaintiff-appellant.
 Joel B. Harris, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. New York, Daniel H. Murphy II, Asst. U. S. Atty., of counsel), for defendant-appellee.
 Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 Appellant taxpayer is the successor to a family of foreign car corporations, consisting of a parent, Hoffman Motor Car Co., Inc. (hereinafter "Hoffman Motor") and several wholly owned subsidiaries-Hoffman-Porsche Corp. (hereinafter "Hoffman-Porsche"); Hoffman Motors Eastern Division, Inc. (hereinafter "Eastern"); and Hoffman of California, Inc., a/k/a Hoffman Western Division, Inc. (hereinafter "Western"). The appeal relates to automobile excise taxes: first on Porsches imported by Hoffman-Porsche and Mercedes imported by Eastern; second on Alfa Romeos sold by Western; and third on Jaguars sold by Hoffman Motor. Appellant brought a refund suit for excise taxes paid on cars imported between 1953 and 1959 and after a trial in the Southern District of New York the complaint was dismissed, the decision being reported at 336 F.Supp. 102. Appeal is taken pursuant to 28 U.S.C. Sec. 1291. For ease of comprehension the opinion will be divided into three parts, corresponding to the causes of action below.
 
 
 2
 I. Excise Taxes on Porsches Imported by Hoffman-Porsche and
 
 
 3
 Mercedes Imported by Eastern and Sold at Retail by
 
 
 4
 Hoffman Motor.
 
 
 5
 Hoffman Motor was both a retailer and an importer. It had a New York City retail showroom. In the case of Porsche and Mercedes Benz automobiles, Hoffman acted as a retailer but did not import directly. Rather, when a retail customer ordered a Porsche or a Mercedes from it, Hoffman Motor would then purchase a car from Hoffman-Porsche or Eastern, as the case might be. No New York City sales tax would be paid on that purchase although title passed and a consideration was received. Later Hoffman Motor would sell the car to the retail customer at a price including the New York City sales tax[1] and the federal excise tax based upon the usual wholesale price at which such cars were sold by Hoffman-Porsche or Eastern to unrelated dealers. Hoffman Motor's only compensation for the transfer was $5.00 per car for clerical purposes. Hoffman-Porsche or Eastern paid salesmen's commissions; sales, income and gross receipts taxes; excise taxes; and a proportionate share of the Hoffman Motor showroom expenses. Taxpayer contends that the transfer from Hoffman-Porsche or Eastern to Hoffman Motor was merely a paper transaction and not a wholesale sale, done in this form (i. e., by having Hoffman Motor sell to the retail customer) to avoid New York's legal requirement that each licensed auto retailer maintain a separate showroom. Taxpayer also claims that in the case of Porsches it was necessary to do business with a subsidiary as importer to satisfy Porsche's requirement that "Porsche" be included in the name of the importer.
 
 
 6
 IRS and the court below found that there was a sale at wholesale from Hoffman-Porsche or Eastern to Hoffman Motor, subject to excise tax under Sec. 4061(a)(2) of the 1954 Code[2] on the basis of the actual sales price charged by Hoffman-Porsche to Hoffman Motor. Taxpayer argues that since the transaction was purely a "paper" one it should not be treated as a wholesale sale so that the tax should be based on a constructive sales price under Sec. 4216 of the 1954 Code[3] and under Treas.Reg. Sec. 316.15(c) (1940).[4] In the sample Porsche sale agreed upon below by the parties as typical the average wholesale dealer's price was $3,031.82 (the price at which Hoffman-Porsche sold to dealers other than Hoffman Motor) and the actual price charged by Hoffman-Porsche to Hoffman Motor was $3,646.82. Naturally under taxpayer's theory-based on the argument that we should look through form to substance-the lower price is the one on which the excise tax should be based. In the same case the excise tax at 10 per cent of $3,031.82 was $303.18 which, added to the price to Hoffman Motor, made a retail selling price of $3,950 in addition to which the customer paid a $67.50 New York City sales tax.
 
 
 
 * * *
 
 
 
 7
 * * *
 
 
 8
 The excise tax here in question was meant to be a tax on the wholesale price of goods. Int.Rev.Code of 1954, Sec. 4216(b)(3). If Hoffman Motor and its affiliated importers were for all practical purposes treated as one company, there would have been no meaningful wholesale sale and the excise tax on the sales at retail would be required to be based on the "average selling price for the smallest wholesale lots" sold to distributors not affiliated with Hoffman. Treas.Reg. Sec. 316.15(c) (1940). If the Hoffman Motor organization had merely lowered the price which was charged by the importing companies to Hoffman Motor the controversy before us could have been avoided. But instead the Hoffman group set itself up with separate corporate entities and by conducting the Porsche-Mercedes transactions in this way any profit from the retail sales enured to the direct benefit of the subsidiaries rather than the parent.
 
 
 9
 It is well established in income tax cases that courts will look through the "form" of a business transaction and rule on the basis of its "substance." Commissioner v. Hansen, 360 U.S. 446, 461, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959); see Gregory v. Helvering, 293 U.S. 465, 470, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Thus, a "loan" by a shareholder to his corporation may be treated as an equity investment, Gilbert v. Commissioner, 248 F.2d 399, 402 (2d Cir. 1957); a "loan" made by a corporation to a shareholder may be treated as a dividend, Oyster Shell Products Corp. v. Commissioner, 313 F.2d 449 (2d Cir. 1963); and a sale of property by the shareholder may be treated as though made by the corporation, Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), or the sale may be ignored as a "sham," see National Lead Co. v. Commissioner, 336 F.2d 134, 139-142 (2d Cir. 1964), cert. denied, 380 U.S. 908, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965).
 
 
 10
 While some earlier cases suggested that the substance-form rubric applies only in favor of the Government, cf. Holz v. United States, 176 F.Supp. 330, 337 (D.Minn.1959), this court has said that whether probing form for substance leads to a decision favorable to the Government or to the taxpayer is immaterial, at least in a case involving the personal holding company penal surtax. Frelbro Corp. v. Commissioner, 315 F.2d 784, 786 (2d Cir. 1963); see Comtel Corp. v. Commissioner, 376 F.2d 791, 796 (2d Cir.), cert. denied, 389 U.S. 929, 88 S.Ct. 290, 19 L.Ed.2d 280 (1967); cf. Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226 (1939). There is also some support for this view in other circuits. See Casner v. Commissioner, 450 F.2d 379 (5th Cir. 1971); Swan v. Commissioner, 355 F.2d 795, 797-798 (6th Cir. 1966); Steel Improvement & Forge Co. v. Commissioner, 314 F.2d 96, 97-98 (6th Cir. 1963). See generally Gutterman, Substance v. Form in the Taxation of Personal and Business Transactions, N.Y.U.1962 Inst. on Fed.Tax. 951; Comment, Substance versus Form in the Interpretation of the Internal Revenue Code, 1967 U.Ill.L.F. 816.
 
 
 11
 The transaction cast in the form taxpayer presented it to the taxing authorities (a sale by Hoffman-Porsche or Eastern at retail) may well have had a very real income tax effect, because the profit on the sale at retail was made by the importer (Hoffman-Porsche or Eastern) and not the wholesaler, with the result that the receipt of income was by the subsidiaries and not the parent. In no case that we have found has a taxpayer been permitted to benefit from substance over form if his motives were predominantly tax avoidance. In Frelbro Corp. v. Commissioner, supra, the court suggested that if a taxpayer uses a certain corporate form primarily for income tax avoidance reasons it will not later be permitted to argue that that form was not controlling in determining its taxes. The court specifically noted there was no "suggestion that tax-avoidance motivated the transaction. . . ." 315 F.2d at 786. While the record here does not disclose whether income taxes were saved in any year by spreading corporate family income among the subsidiaries, the burden was on the taxpayer to show that it was not acting to avoid taxes. Cf. Swan v. Commissioner, supra, 355 F.2d at 798; Starday Recording & Publishing Co., Inc. v. United States, 281 F.Supp. 106, 108 (M. D.Tenn.1967). Under the 1954 Code a corporation had a $25,000 exemption from surtax, Int.Rev.Code of 1954, Sec. 11(c), and a $60,000 accumulated earnings credit. Id. Sec. 535(c). The Hoffman corporate family may have been able to take advantage of either or both of these provisions by virtue of the internal transfer of income established by its corporate structure.[5] This would suggest that the Hoffman corporate family may have had a tax avoidance motive in structuring its Porsche and Mercedes-Benz importing companies.
 
 
 12
 On the other hand there are several factors which suggest that the taxpayer's motive was simply to satisfy a requirement of the New York State Motor Vehicle Department that only one retail automobile dealer could be licensed to operate in a single showroom.[6] That motive is not relevant to the question of what price is to be used for the imposition of federal excise taxes. The existence of the separate companies and the conduct of business out of a single showroom licensed to the parent was open and obvious to all, including the Motor Vehicle Department. The procedure was followed with the knowledge and sanction of the Motor Vehicle Bureau of New York, and there was nothing improper about such a method of doing business. The parent was licensed to operate the single showroom and a reason for the formation of a separate subsidiary bearing the name of Hoffman-Porsche was to satisfy the foreign manufacturer's requirement that the name "Porsche" be used in the corporate name of the importer.
 
 
 13
 Absent further findings, it is difficult for us to say whether the taxpayer has carried its burden of proof on the issue whether the multiple corporation structure used to import and sell Porsche and Mercedes-Benz automobiles was substantially motivated by a desire to avoid corporate income taxes. Because we are remanding on the second part in any event and because we feel that it is the fair thing to do, we remand on this question of motive to give the parties an opportunity to offer further evidence and the court to make further findings as to the existence or non-existence of a substantial tax avoidance motive.
 
 
 14
 II. Excise Taxes on Alfa Romeos Imported by Hoffman Motor
 
 
 15
 and Sold at Retail by Western.
 
 
 16
 Hoffman Motor imported Alfa Romeo automobiles and sold them to dealers throughout the United States. Western, another subsidiary, was the exclusive West Coast distributor. Alfa Romeos sold to Western received special crating costing $69.66. Alfas were sold to independent dealers in other parts of the country, as to whom special crating was not required, at a price of $2,548.00 per car. They were sold to Western at $2,591.66, including the special crating charge; thus, Hoffman Motor absorbed $26 of Western's crating expense. This was done, however, although the district court made no specific finding in this regard, apparently because Hoffman Motor's contract with the Italian manufacturer required a nationwide uniform retail price.
 
 
 17
 Section 4216(a) of the 1954 Code requires that the excise tax base include container charges.[7] The Commissioner and the court below held that a constructive sales price equal to the full retail price charged to independent dealers in other parts of the country ($2,548.00) plus the full crating price ($69.66), totaling $2,617.66, must be used under Sec. 4216(b) (1) (C), quoted in footnote 3, above, because the basis that the vehicles sold by Hoffman Motor to Western were not sold at arm's length-concededly-and were sold "at less than the fair market price" within the statute. But, if there were truly a manufacturer imposed requirement of a uniform national sales price it is likely that something like the discount given by Hoffman Motor to Western would have occurred in an arm's length transaction. The manufacturer's requirement of retail sales being at a uniform price, if indeed there were such a requirement, would be one of the business realities, see Quaker City Iron Works, Inc. v. United States, 256 F.Supp. 450 (E.D.Pa.1966); cf. Gregory v. Helvering, supra, 293 U.S. at 469-470, 55 S.Ct. 266, 79 L.Ed. 596, which would permit the taxpayer here to look through form to substance. If Hoffman Motor had absorbed the entire crating cost suspicion would be invited that this was done to minimize the excise tax, but the approximate 60%-40% split here seems reasonable. Of course, if Hoffman Motor sold to Western at a lower price than to independent western distributors the price to the independent western distributors would be the effective base for computing the excise tax on the Hoffman-Western sales. We were told on argument that there were no independent western distributors, but the court below did not make any finding on this point.
 
 
 18
 We accordingly remand on this point for further findings. In doing so we do not foreclose the court below from taking further evidence concerning tax avoidance motivation or otherwise bearing on the Alfa transactions. But on the facts as they now appear we fail to see what advantage there would be to Hoffman Motor or to its western distributor-subsidiary in agreeing to, let alone instigating, a requirement of a uniform national retail price. Absent such, the explanation that each was absorbing a portion of the special crating cost does not seem unreasonable, and the fair market price to Western would be the $2,591.66 per vehicle on which excise tax was paid by the taxpayer.
 
 
 19
 III. Excise Tax on Jaguars.
 
 
 20
 Taxpayer argues that it should be entitled to exclude $30 of the consideration received from its Jaguar distributors during the relevant period, on the basis that these payments were paid to Jaguar Co. and used by it to reimburse local dealers for local advertising. Taxpayer relies upon this court's language that "the consistent administrative practice of the Treasury from 1932 to 1956 permitted [local advertising] to be credited as readjustments of the sales price." Waterman-Bic Pen Corp. v. United States, 332 F.2d 711, 715 (2d Cir. 1964).[8] While the applicable statutes (and regulations) in effect from November 30, 1958, through March 31, 1960, were construed in Waterman-Bic not to permit the exclusion of a manufacturer's local advertising allowance,[9] the tax years here in question were 1955 and 1956 and hence fall within the period permitting administrative exclusionary treatment under the language above quoted. If the basis for the trial court's decision were that Waterman-Bic was controlling for these taxable years, we might be forced to remand. The court below found, however, that the taxpayer "never proved that $30 deduction by checking the distributors' records," "produced no details of any records of the advertising spent," and "failed to produce proof that the advertising charge collected was for local purposes rather than national and failed to demonstrate that all of the monies collected were in fact collected."
 
 
 21
 On the strength of these findings and the record below we agree with the alternate conclusion of the district court that the taxpayer had not sustained its burden of proof. Only vague and undocumented testimony was offered below to substantiate taxpayer's contention that the money was actually spent for local advertising. No copies of the advertisements and no dealers' or distributors' records were submitted.
 
 
 22
 Judgment affirmed as to excise taxes on Jaguars. Cause remanded as to excise taxes on Porsches imported by Hoffman-Porsche and Mercedes imported by Eastern and sold at retail by Hoffman Motor and as to excise taxes on Alfa Romeos imported by Hoffman Motor and sold at retail by Western, for findings in accordance with opinion.
 
 MANSFIELD, Circuit Judge (concurring):
 
 23
 I concur in Judge Oakes' thorough and carefully considered opinion. However, I wish to disassociate myself from the statement in Judge Timbers' separate concurrence to the effect that if Judge Levet's findings and conclusions are as correct as he believes them to be, there is ample scope on remand to reach the same result.
 
 
 24
 There were no findings of fact by the district court with respect to the matter which we, upon appeal, have introduced as a key issue governing Part I, i. e., whether the taxpayer may have been motivated by a desire to lessen income taxes. What evidence there is in the record indicates rather convincingly that the taxpayer's sole motive was satisfaction of a requirement of the New York State Motor Vehicle Department to the effect that only one retail automobile dealer could be licensed to operate out of a single showroom.[1] Other than to indicate that the taxpayer was not using intercorporate sales for the purpose of avoiding income taxes, its method of meeting the Motor Vehicle's requirement has no relevancy to the question of what price is to be used for imposition of federal excise taxes. Nor does it indicate any "unclean hands" on the taxpayer's part. The existence of the separate companies and the conduct of business out of a single showroom licensed to the parent was open and obvious to all, including the Motor Vehicle Department. The procedure was followed "with the knowledge and sanction of the Motor Vehicle Bureau of New York," and there was nothing improper about such a method of doing business. The parent was licensed to operate the single showroom and apparently the sole reason for the formation of a separate subsidiary bearing the name of Hoffman-Porsche was to satisfy the foreign manufacturer's requirement that the name "Porsche" be used in the corporate name of the importer.[2]
 
 
 
 * * *
 Thus, upon the present record, a finding that the taxpayer had satisfied its burden of proving the absence of a tax avoidance motive would be justified, if not compelled. However, I have concurred in the remand so that the learned district judge may now consider that issue in the light of the present record and such additional evidence as the parties may wish to offer.
 TIMBERS, Circuit Judge (concurring):
 I would affirm in all respects on the extraordinarily able opinion of Judge Levet. Hoffman Motors Corp. v. United States, 336 F.Supp. 102 (S.D.N.Y.1971).
 I would say the same with respect to Judge Levet's findings of fact here as I had occasion to say with respect to another district judge's findings a while back:
 "All in all, I find [the district judge's] findings of fact to be clear, comprehensive and precise. In each instance they are buttressed by the evidence. As such, they are not clearly erroneous and should not be set aside. We should not substitute our findings as to the facts, or as to the inferences to be drawn from the facts, for those of the trial judge. United States v. 396 Corp., 264 F.2d 704, 709 (2 Cir. 1959) (Gibson, J.); Watson v. Joshua Hendy Corp., 245 F.2d 463, 464 (2 Cir. 1957); Ferguson v. Post, 243 F.2d 144, 145 (2 Cir. 1957); Purer & Company v. Aktiebolaget Addo, 410 F.2d 871, 878 (9 Cir.), cert. denied, 396 U.S. 834 (1969). Cf. Dunlop v. Warmack-Fitts Steel Co., 370 F.2d 876, 879 (8 Cir. 1967)." (footnotes omitted) Spear Construction Co. v. Fidelity & Cas. Co. of N. Y., 446 F.2d 439, 448 (2 Cir. 1971) (concurring-dissenting opinion).
 Nevertheless, I concur in the judgment of the Court and in Judge Oakes' well considered majority opinion despite its remand on certain issues under Parts I and II. I do so because I am confident that, if Judge Levet's findings and conclusions are as correct as I believe them to be, there is ample scope on remand for him to reach the same result.
 
 
 [1]
 New York Tax Law Secs. 1105(a), 1117 (McKinney's Consol.Laws, c. 60, 1966)
 
 
 [2]
 Section 4061(a) at the times applicable here provided:
 There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:
 (2) Articles taxable at 10 percent except that on and after April 1, 1955, the rate shall be 7 percent-
 Automobile chassis and bodies . . .
 A sale of an automobile . . . shall . . . be considered to be a sale of the chassis and of the body . . . .
 
 
 [3]
 Section 4216 provided in pertinent part:
 (b) Constructive sale price.-If an article is-
 (1) sold at retail,
 (2) sold on consignment, or
 (3) sold (otherwise than through an arm's length transaction) at less than the fair market price, the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary or his delegate.
 
 
 [4]
 This regulation provides in pertinent part:
 If a manufacturer sells regularly at wholesale at several varying but bona fide rates of discount, ordinarily his average selling price for the smallest wholesale lots will be the basis of tax with respect to retail sales.
 
 
 [5]
 It may be true that the Government had the opportunity to attack the taxpayer's multi-corporation structure for corporate income tax purposes through the courts, as was successfully done in a few cases. Shaw Construction Co. v. Commissioner, 35 T.C. 1102 (1961), aff'd, 323 F.2d 316 (9th Cir. 1963) (80 corporations); Aldon Homes, Inc., 33 T.C. 582 (1959). See generally Watts, Tax Problems of Regard for the Corporate Entity, N.Y.U.1962 Inst. on Fed. Tax. 867. Such attacks were so unlikely to succeed, however, that new legislation was eventually required, e. g., preventing more than one corporation in a family from obtaining the surtax exemption. See Act of Feb. 26, 1964, Pub.L.No. 88-272, Sec. 235(c)(2), 78 Stat. 126, amending Int.Rev.Code of 1954, Sec. 269(a); id. Sec. 235(b), 78 Stat. 125, amending Int. Rev.Code of 1954, Sec. 1551(a); Act of Dec. 30, 1969, Pub.L.No. 91-172, Sec. 401 (a) (1), (h) (1), 83 Stat. 599, 604, codified at Int.Rev.Code of 1954, Sec. 1561; id. Sec. 401(b) (1), 83 Stat. 600, codified at Int.Rev.Code of 1954, Sec. 1564
 
 
 [6]
 Before trial the taxpayer contended in his Pretrial Memorandum (at 2), incorporated by reference in the district court's Pretrial Order dated July 31, 1969 (at 2), that:
 The parent company (plaintiff) was used merely as a conduit, since and because the plaintiff was the tenant in the retail outlet, and the Motor Vehicle Regulations of New York prohibited more than one tenant to be in a retail outlet. This procedure was done and made with the knowledge and sanction of the Motor Vehicle Bureau of New York, which Department shall be subpoenaed; in addition to plaintiff's secretary, Mr. Thomas J. Kelly, and its certified public accountant, Philip Miller, as witnesses, to testify as to the adoption of the above procedure.
 At trial taxpayer supported the foregoing contention with uncontradicted evidence.
 
 
 [7]
 Section 4216(a) of the 1954 Code provides:
 (a) Containers, packing and transportation charges.-In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, . . ..
 
 
 [8]
 Section 4216(f) of the 1954 Code which permits certain local advertising expenses to be excluded is applicable only after 1960, when it was added to the Code, Pub.L.No. 86-781, 74 Stat. 1017 (1960)
 
 
 [9]
 To be excludable from the excise tax base the expenditure must be for local rather than regional or national advertising. Int.Rev.Code of 1954, Sec. 6416(b) (1); Waterman-Bic Pen Corp. v. United States, 332 F.2d 711, 714 (2d Cir. 1964); cf. F. W. Fitch Co. v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472 (1945) (national advertising costs not excluded under the predecessor of Sec. 4216 (a) as "other charge")
 
 
 [1]
 The taxpayer's Pre-Trial Memorandum (at 2) which was incorporated by reference in the district court's Pre-Trial Order dated July 31, 1969 (at 2) stated:
 "The parent company (plaintiff) was used merely as a conduit, since and because the plaintiff was the tenant in the retail outlet, and the Motor Vehicle Regulations of New York prohibited more than one tenant to be in a retail outlet. This procedure was done and made with the knowledge and sanction of the Motor Vehicle Bureau of New York, which Department shall be subpoenaed; in addition to plaintiff's secretary, Mr. Thomas J. Kelly, and its certified public accountant, Philip Miller, as witnesses, to testify as to the adoption of the above procedure."
 At trial Thomas J. Kelly, the taxpayer's secretary testified:
 "Q. Could you explain why Hoffman-Porsche Car Corporation and Hoffman Motors Eastern Division in selling at retail sold through Hoffman Motor Car Company, Inc.?
 "A. Yes, because we had our initial license with the New York State Motor Vehicle Department in the name of Hoffman Car Corporation and when we applied for a second license I was informed by a gentleman now deceased, Mr. Gray of the motor vehicle department, that it was not possible, contrary to the regulations and policies of the motor vehicle department, to issue two retail licenses for a different manufactured product in the same premises. You only could have one license for one premises.
 "Mr. Mann: Your Honor, we are not using that statement to prove the existence or nonexistence of the policy of the State of New York. We are using that merely to show that the state of mind and as part of the res gestae of Hoffman Motors' decision to conduct a business in a given manner, where in fact it was or was not the policy of the state is not truly the relevant issue here.
 "The Court: Why do you go into it, then?
 "Mr. Mann: It is important for the purpose of this case to establish why Hoffman Motor decided to use a transaction which in form the government has said caused a taxable event which we claim didn't exist. And I think it is quite important to demonstrate why the company decided to operate in this manner and that they did have in their own minds a bona fide reason for setting up this type of transaction." (App. at 51-52)
 The taxpayer submitted Proposed Findings of Fact and Conclusions of Law, dated April 18, 1972, conforming to the foregoing uncontroverted evidence. (See Proposed Findings 9-12)
 
 
 [2]
 Eastern's existence as a separate subsidiary arose from the fact that it succeeded to another Hoffman subsidiary, Mercedes-Benz Distributors, Inc., which from 1953 to May 1957 had directly handled retail sales through its own showroom. In 1957 its separate New York State Retailer's License was surrendered and Eastern imported and marketed Mercedes-Benz cars through the Hoffman Motors showroom. At all times Hoffman Motors acted merely as a conduit